IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUSTIN CACHOLA BONILLA, JUAN CANALES MEDINA, JUAN R. OJEDA, MELVIN RODRÍGUEZ LÓPEZ, JULIO RODRÍGUEZ MILLAND and JUAN C. MOCTEZUMA,<br><br>Plaintiffs<br><br>v.<br><br>WYNDHAM EL CONQUISTADOR RESORT & COUNTRY CLUB<br><br>Defendant | CIVIL NO. 05-2294 (DRD)<br><br>CLAIM (UNLAWFUL DEDUCTION OF TIPPED EMPLOYEES); RETALIATION<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

## MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 AND MEMORANDUM OF LAW IN SUPPORT THEREOF

TO THE HONORABLE COURT:

COMES NOW the Defendant El Conquistador Partnership, L.P., S.E. d/b/a El Conquistador Resort and Country Club ("the Defendant" or "El Conquistador"), through its undersigned attorneys, and respectfully submit their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56:

### I. INTRODUCTION

The Plaintiffs bring the instant case, invoking the Court's subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1337, and of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(m), §203(t), as amended, and 29 U.S.C. §215(a)(3). The Plaintiffs claim that

the Defendant was illegally deducting twenty five (25%) from their tips and retaliated against the Plaintiffs for having complained of such unlawful practice. The Plaintiffs claim an amount of not less than $20,748.00 and an equal amount as liquidated damages for each Plaintiff.

Furthermore, the Plaintiffs allege Plaintiffs Justin Cachola , Juan Canales, and Melvin Rodríguez were terminated from employment in retaliation for asserting their rights as provided in 29 U.S.C.A. 215 (a)(3), and are claiming back pay, front pay, the cost of any employment benefit, and an equal amount in liquidated damages. Plaintiffs Justin Cachola, Juan Canales, and Melvin Rodríguez are also claiming they have each suffered damages estimated in the amount of $10,000.00. The Plaintiffs further claim they are entitled to be awarded costs and reasonable attorney's fees.

The Defendant took a deposition to each one of the Plaintiffs. The admissions obtained from each of the Plaintiffs during such depositions, together with the evidence on the record [that has been attached to the Statement of Uncontested Material Facts filed jointly with the present motion] and the law and the regulations, both assist El Conquistador in its position and demonstrate that there is no genuine issue of material fact as to the Plaintiffs' causes of action and summary judgment should be entered to dismiss the present claim.

The Defendant's argument can be summarized as follows: (1) the amounts typified by the Plaintiffs as tips are nothing more than a service charge, which is a compulsory charge for service; (2) the allegedly illegal twenty five percent (25%) service charge deductions are legal according to the FLSA and its regulations ; (3) the Plaintiffs have no evidence to establish that

Plaintiffs Justin Cachola, Juan Canales, and Melvin Rodríguez were terminated without just cause by the Defendant for having complained about the allegedly illegal deductions. On the contrary, the evidence at hand establishes that the Plaintiffs were terminated from employment for more than just cause, pursuant to the reasonable conduct rules and regulations ("house rules") implemented by El Conquistador and in accordance with Puerto Rico Law 80 of May 30, 1976, 29 L.P.R.A. §§185a-185m ("Law 80"). They were terminated in response to their willful violations to the house rules consisting of performance below standards; failure to follow proper procedures; absenteeism; violation to the no show/no call rule; job abandonment; alteration of records; failure to punch in/punch out; and similar violations, all legitimate, non-discriminatory and non-retaliatory reasons.

In light of Plaintiffs' lack of evidence to sustain their illegal tip deduction and retaliation discharge claims, the Defendant moves the Court to dismiss all the causes of action filed in the Complaint pursuant to Federal Rule 56 of Civil Procedure, inasmuch as there is no genuine issue of material fact requiring a trial, and summary judgment should be entered on El Conquistador's behalf as a matter of law.

## II. SUMMARY JUDGMENT STANDARD

The Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir.

1993).

Once the moving has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P. R. Wireless Corp., 217 F. 3d 46, 52 (1st Cir. 2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-Carrasquillo v. Rubianes, 230 F. 3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P. R., 27 F. 3d 746, 748 (1st Cir. 1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F. 3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F. 3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F. 3d 1156, 1157 (1st Cir. 2002). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F. 2d 701, 703 (1st Cir. 1993).

When, as here, the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment, the non-moving party bears the burden of showing the existence of some factual disagreement sufficient to defeat the motion. The burden, however, is satisfied if

the cited disagreement relates to a genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248. "In this context, 'genuine issue' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." <u>United States v. One Parcel of Real Property, Ect.</u>, 960 F.2d 200, 204fs (1st Cir. 1992); <u>Hahn v. Sargent</u>, 523 F.2d. 461, 464 (1st Cir. 1975). Therefore, a factual issue is material only if it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment. <u>U.S. Fire Ins. Co. v. Producciones Padosa Inc.</u>, 835 F.2d 950, 953 (1st Cir. 1987).

The Plaintiffs here bear the burden of showing that there are factual issues for trial which must be resolved before the legal issues in the case can be decided. <u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1262 (1st Cir. 1992); <u>Over the Road Drivers, Inc. v. Transport Ins. Co.</u>, 637 F.2d 816, 818 (1st Cir. 1980). When meeting its burden, the opposing party may not rest upon mere conclusive allegations, improbable inference, unsupported speculations or denial in its pleading. Instead, it must set forth specific facts which arise from definite and competent evidence to establish the existence of a genuine issue for trial. <u>Pagano v. Frank</u>, 983 F.2d 343, 347 (1st Cir. 1993); <u>Wynee v. Tufts Univ. School of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992), *cert. den.* 123 L.Ed.2d 470.

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial. <u>Celotex</u>, supra, at 322.

## III. LEGAL FRAMEWORK

### A. The Fair Labor Standards Act and the definition of a "tip" vis-a-vis a "service charge"

A "tip" for purposes of the FLSA is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer." 29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.52. By contrast, a "service charge" is a mandatory charge imposed by an employer on a customer that is the property of the <u>employer</u>, not the employees, and becomes part of the employer's gross receipts. 29 C.F.R. § 531.55. (Emphasis supplied.)

The DOL has provided additional guidance in determining whether a fee is a tip or wage under the FLSA. "[S]ervice charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]." 29 C.F.R. § 531.55(b).

### § 531.55 Examples of amounts not received as tips.

> (a) A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t). Similarly, where negotiations between a hotel and a customer for banquet facilities

include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received. Likewise, where the employment agreement is such that amounts presented by customers as tips belong to the employer and must be credited or turned over to him, the employee is in effect collecting for his employer additional income from the operations of the latter's establishment. Even though such amounts are not collected by imposition of any compulsory charge on the customer, plainly the employee is not receiving tips within the meaning of section 3(m) and 3(t). The amounts received from customers are the employer's property, not his, and do not constitute tip income to the employee.

(b) As stated above, **service charges and other similar sums** which become part of the employer's gross receipts are not tips for the purposes of the Act. However, where such sums are distributed by the employer to his employees, they may be used in their entirety to satisfy the monetary requirements of the Act. Also, if pursuant to an employment agreement the tips received by an employee must be credited or turned over to the employer, such sums may, after receipt by the employer, be used by the employer to satisfy the monetary requirements of the Act. In such instances, there is no applicability of the 50-percent limitation on tip credits provided by section 3(m). (*Emphasis ours.*)

According to the regulation quoted above, service charges may be used in their entirety to satisfy the minimum wage provisions set forth by the FLSA. Furthermore, an employer is under no obligation to turn over the entire amount of the service charge to the employee.

## B. Retaliatory Discharge Claims under Section 15 (a)(3) of the Fair Labor Standards Act, 29 U.S.C. 215§ (a)(3)

The Plaintiffs allege in their Complaint that Plaintiffs Cachola, Rodríguez-López and Canales were illegally terminated from employment in open and willful manifest and open retaliation for

having complained about the allegedly illegal deductions El Conquistador was making from their tip payments. Nothing could be further from the truth.

Section 15 (a)(3) of the Fair Labor Standards Act, 29 U.S.C. 215§ (a)(3) establishes that:

> [I]t shall be unlawful for any person—
> [...]
> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint nor instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding...

Any plaintiff alleging retaliatory discharge under Section 15(a)(3) must be able to make his or her way through the familiar ping-pong approach dictated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), as rearticulated in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981). Under that burden-shifting method of proof, a plaintiff must first establish a *prima facie* case of discrimination.

It is important to point out that informal employee complaints are not always "statutorily protected activities" and do not fall within the scope of the FLSA's anti-discrimination provisions. Lambert v. Genesee Hosp., 10 F.3d 46 (2d Cir. 1993); O'Neill v. Allendale Mut. Ins. Co., 956 F. Supp. 661 (E.D. Va. 1997). As a matter of fact, in Gotay v. Becton Dickinson Caribe Ltd., 375 F.3d 99 (1st Cir. 2004), the First Circuit Court of Appeals ruled that an employee was not engaging in a protected activity when he complained verbally and in writing to his employer that subcontractors who worked for the company were not being properly paid overtime wages under the FLSA. According to the First Circuit Court of Appeals, said complaints did not rise to

a level that would trigger the FLSA's anti-retaliation protections. Rather, the Court found that Mr. Gotay's actions were "in furtherance of his job responsibilities," since his duties included managing the subcontract workers and making sure they received the right amount of pay. In making said determination, the First Circuit Court of Appeals cited McKenzie v. Renberg's Inc., 94 F.3d 1478 (10th Cir. 1996), in which the Tenth Circuit found that an employee must "step outside his or her role of representing the company and file an action adverse to the employer" in order to engage in a protected activity.

In order to establish a *prima facie* case under said statute, Courts have held that Section 215(a)(3) protects an employee when (1) the employee has engaged in a statutorily protected activity and (2) the employer then subjects the employee to an adverse employment action (3) as a reprisal for a protected activity. Blackie v. Maine, 75 F.3d 716 (1st Cir. 1996). Once the Plaintiff establishes his or her *prima facie* case, the burden shifts to the employer defendant to articulate a legitimate, nondiscriminatory reason for the discharge. Once that burden of production is met, the plaintiff must then show that the stated reasons are a pretext for discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Furthermore, it is important to point out that the protection provided to employees under the FLSA has its limits. For example, if an employee is terminated for reasons other than retaliation for engaging in a protected activity, such as misbehavior or unreasonable absences, the termination can be upheld. Boll v. Fed. Reserve Bank of St. Louis, 497 F.2d 335 (8th Cir. 1974); Hodgson v. Texaco Inc., 440 F.2d 662 (5th Cir. 1971).

# IV. LEGAL ARGUMENTATION

**A. El Conquistador was not illegally deducting twenty five percent (25%) from the Plaintiffs' gratuities or tips inasmuch as the amounts in question are service charges.**

The Plaintiffs allege that El Conquistador illegally deducted twenty five percent (25%) from the tips or gratuities they received from the customers the Plaintiffs served. Nothing could be further from the truth, as El Conquistador has always distributed one hundred percent of the tips received by the employees to the employees. On the other hand, El Conquistador imposed a service charge of twenty percent (20%) to Le Bistro customers whenever they consumed at said restaurant. This service charge was collected by El Conquistador and seventy five (75%) of it (which equals to fifteen percent (15%) of the twenty percent service charge (20%)) was redistributed to its employees. Once more, this amount was not a tip, but a compulsory charge for service that was imposed upon the customers.

The first piece of evidence that establishes that the amounts in dispute in the present case was a service charge was the Le Bistro menu, which clearly established that there would be a twenty percent (20%) service charge added in the customer's check. See Statement of Uncontested Facts No. 2. The Plaintiffs in this case admit that this charge was included in the customers' checks, and was as compulsory as agreeing to pay a set amount for a specific dish or wine bottle. See Statement of Uncontested Facts No. 33, 38, 59. While various of the Plaintiffs alleged during the taking of their depositions that the "service charge" was not a compulsory charge because they had the discretion to "fix the problem" if a customer did not want to pay for it, the truth is that the customer's "discretion" in paying the service charge was the same as the

customer's discretion in paying any other item from the menu. If the food or wine ordered and served did not satisfy the customer's expectations, the supervisor or manager might decide to take the amount off the check, just like it could happen with the compulsory service charge. It is inevitable to conclude that this type of situation, <u>exceptional in nature</u>, most certainly does not convert a compulsory service charge into a discretionary charge. It is ludicrous for the Plaintiffs to challenge an established practice by means of setting forth the exceptions.

As mentioned above, under the FLSA, "[a] tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity." See 29 C.F.R. 531.52. The federal regulations specifically establish that a compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip. See 29 C.F.R. 531.55. Furthermore, federal regulations provide that where all or part of such "service charges" are distributed to employees, such payments "may be used in their entirety to satisfy the monetary requirements" of the federal minimum wage law. 29 C.F.R. § 531.55 (b). It is significant to state that the Plaintiffs in this case are not alleging they ever made below the minimum wage under the FLSA.

It is also important to mention that any "discretionary" amounts left by the customers to the wait staff were identified in the Le Bistro guest checks as additional tips or gratuities, and those amounts were given to the employees in their entirety. See Statement of Uncontested

Facts No. 33 It is also essential to point out that while certain working documents at the Hotel use the term "tip" or "gratuity" to refer to the service charge, by strict definition one must inescapably conclude that the amounts in question in the present case were compulsory charges for service and the alleged deductions were within the terms of the FLSA.

In light of the affirmative defenses raised by the Defendant, the Plaintiffs saw the need to retain the services of an expert witness, Mr. Ronaldo Sanabria ("Mr. Sanabria"). Despite the numerous extensions of time granted by this Honorable Court to conclude the discovery in this case and despite the fact that El Conquistador complied with the Plaintiff's onerous discovery requests, Mr. Sanabria rendered an expert report based on very limited information. See Statement of Uncontested Facts No. 70. As a matter of fact, the Defendant was under the impression that the report rendered had been a preliminary expert report[1], reason for which on July 27, 2007, this Court granted the Plaintiffs until August 13, 2007, to notify the Defendant the Plaintiffs' final version of their expert report and granted the Defendant until September 30, 2007, to take a second deposition to the Plaintiffs' expert witness. See Docket No. 44. However, to the Defendant's surprise, on August 28, 2007, the Plaintiffs advised the Defendant and this Honorable Court that "no additional reports would be submitted and thus, Mr. Ronaldo Sanabria's previous report should be taken as plaintiffs' expert witness final report." See Docket No. 46.

While the Defendant does not give any credibility or validity to Mr. Sanabria's "preliminary" expert report, for the sake of argument only, the Defendant considered Mr.

Sanabria's testimony during his deposition. Mr. Sanabria stated during the taking of his deposition that while there were no entries in the earning statements made available to him for examination that were identified as service charges, he does not rule out the possibility that they were service charges. See Statement of Uncontested Facts No. 71. He further declared that if the records differ from the actual practice and the Defendant is able to come up with documentation that establishes that the amounts in question are in fact service charges, he would change his position. See Statement of Uncontested Facts No. 72. According to Mr. Sanabria, if circumstances should subsequently prove that the amounts in question in the present case are service charges and not tips, limiting himself to the allegations of the Complaint, there would not be a violation of the FLSA, as it is clear that the employer is under no obligation to turn over the entire amount of the service charge to the employee. See Statement of Uncontested Facts No. 77.

It is of uttermost important to mention that nine (9) of the fourteen (14) pages of Mr. Sanabria's "expert" report are dedicated to his comments on the allegations of the Complaint and the affirmative defenses raised by the Defendant, assignment which exclusively corresponds to this Honorable Court and not someone without any formal legal training. See Statement of Uncontested Facts No. 68 and 69. Furthermore, even when the last few pages of Mr. Sanabria's expert witness report could arguably contain some "substance", he did not consider the differences between a tip and a service charge in his report despite that it is clear and unambiguous from the allegations and affirmative defenses raised in the Complaint and the

---

1 See Statement of Uncontested Facts No. 67

Answer to the Complaint that said issue is fundamental in this case. As a matter of fact, Mr. Sanabria failed to include in his expert report any references to Section 531.55 of the Code of Federal Regulations, even though that is the section that clarifies the distinction between a tip and a service charge. He claims he doubts that he "overlooked" it, but "may not have regarded as important to include it." See Statement of Uncontested Facts No. 75.

It is also important to mention that after Plaintiff Canales was terminated, he presented a claim against El Conquistador before the Wage and Hour Division of the U.S. Department of Labor ("DOL") alleging El Conquistador was making illegal deductions from his tips. This claim was investigated by the Wage and Hour Division of the DOL. Investigator Ivette Plaza of the DOL visited El Conquistador and cut short the investigation upon learning that the amounts received by the Plaintiffs were not tips, but compulsory customer charges for service. See Statement of Uncontested Facts No. 22.

In conclusion, El Conquistador has always complied with the relevant provision of the FLSA and all relevant statutes concerning wages and has never made any illegal deductions from the employees' tips or gratuities. As mentioned above, "a compulsory charge for service…is not a tip", and belongs in its entirety to the employer, "even if distributed by the employer to his employees" and even if it is used in its entirety to satisfy the monetary requirements of the FLSA.

**B. Plaintiffs Cachola, Canales, and Rodríguez-López and Rodríguez-Millán were terminated for just cause by the Defendant**

In order to establish a *prima facie* case of retaliatory discharge, the Plaintiff must first

show that he or she engaged in activity protected by Section 215(a)(3). The Plaintiffs' informal complaints to their supervisors or at staff meetings do not rise to the level of instituting formal proceedings as described by the literal language of said statute. The only Plaintiff that filed a complaint outside of El Conquistador was Plaintiff Canales, and he filed the same <u>after</u> he was terminated from employment position at El Conquistador. See Statement of Uncontested Facts No. 19 & 20.

Plaintiff Canales stated during his deposition that shortly after he was terminated, he presented a claim against El Conquistador before the Wage and Hour Division of the U.S. Department of Labor ("DOL") alleging El Conquistador was making illegal deductions from his tips. This claim was investigated by the Wage and Hour Division of the DOL. Investigator Ivette Plaza of the DOL visited El Conquistador and cut short the investigation upon learning that the amounts received by the Plaintiffs were not tips, but compulsory customer charges for service.

Nonetheless, asserting for the sake of argument only that the Plaintiffs' internal complaints to their supervisors and to Human Resources is enough to constitute a protected activity under the FLSA, the Plaintiffs do not have any evidence to establish the necessary causal connection between their complaints about the allegedly illegal deductions and their employment terminations. Even if this Honorable Court is generous at the *prima facie* stage of the required analysis, the aforementioned Plaintiffs would have to overcome the same barriers at the final "pretext" stage of a *McDonnell Douglas/Burdine* analysis. The Defendant has more than enough proof as to its asserted legitimate reasons for Plaintiffs Canales', Cachola's, Rodríguez-López'

and Rodríguez-Millan's employment terminations. Their terminations followed the parameters set forth in Law 80, which establishes that good cause for the discharge of an employee from an establishment shall be understood to be: (a) [t]hat the worker indulges in a pattern of improperly conduct; (b) [t]he attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standard of quality of the product produced or handled by the establishment; (c) [t]he employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee[.] 29 L.P.R.A. 185b.

Canales began working at El Conquistador on February 12, 2002 as captain of Le Bistro restaurant. See Statement of Uncontested Facts No. 7 and 11. He was terminated on June 28, 2004, for violation of El Conquistador House Rules which included the willful falsification of Hotel records, unlawful and immoral conduct or behavior deemed unbecoming of a Wyndham employee, and failure to comply with Hotel policies and procedures. See Statement of Uncontested Facts No. 8. Canales admitted he was "redistributing" the service charge in order to avoid giving the Hotel twenty five percent (25%) of the service charge and sharing this money with all his employees. See Statement of Uncontested Facts No. 9. This was done bypassing the policies of the Hotel without El Conquistador's authority to do so. See Statement of Uncontested Facts No. 15. The investigation carried out in relation to Canales' termination showed that Canales' conduct resulted in a loss of approximately two thousand dollars ($2,000.00) for the Hotel. See Statement of Uncontested Facts No. 10. Canales' conduct was intolerable and thus his termination was justified.

Cachola began working as a steward at El Conquistador on December 4, 2002. See Statement of Uncontested Facts No. 23. When Cachola was a steward, "he was disciplined frequently." See Statement of Uncontested Facts No. 24. At the time of his termination, Cachola was a server at Le Bistro Restaurant, located at El Conquistador. See Statement of Uncontested Facts No. 25. On July 2, 2004, Cachola was suspended pending investigation for possible termination from employment because he left his work shift without proper authorization. See Statement of Uncontested Facts No. 27. On July 29, 2007, Cachola was issued a written warning for not showing up nor calling to excuse himself from a mandatory training session. See Statement of Uncontested Facts No. 28. On August 11, 2004, Cachola was issued a written warning for not showing up or calling to excuse himself from work the day before, when he was scheduled to begin working at 3:00 p.m. See Statement of Uncontested Facts No. 29. On August 27, 2004, Cachola was suspended pending investigation for possible termination from employment because he did not follow the proper procedures while making a guest check. See Statement of Uncontested Facts No. 30. Cachola was terminated on September 1, 2004 as a result of the last disciplinary action mentioned. See Statement of Uncontested Facts No. 31. Once more, El Conquistador terminated Cachola's employment for just cause as Cachola had numerous opportunities to correct his conduct, and it is clear that there is no causal connection between his Complaint allegations and his termination.

On August 26, 2004, Rodríguez-López was suspended pending investigation for possible employment termination as a result of flagrant and inexcusable violations to the House Rules of El Conquistador. See Statement of Uncontested Facts No. 41. Rodríguez-López incurred in

serious mismanagement of Hotel property by serving guests certain items and not charging them for them. He was terminated on September 1, 2004. See Statement of Uncontested Facts No. 42. His employment termination was more than justified under the parameters of Law 80.

On August 19, 2002, Rodríguez-Millán was issued a written warning for violating the no show/no call rule to excuse himself from work the day before and did not follow the appropriate procedures. Rodríguez-Millán acknowledged his mistake and informed his supervisor it would not happen again. See Statement of Uncontested Facts No. 47. On February 25, 2006, Rodríguez-Millán was issued a written warning because of his excessive absenteeism in the last sixty (60) days. Said warning was discussed with Rodríguez-Millán on March 7, 2006, time in which El Conquistador's attendance and punctuality employment policies were also reviewed with Rodríguez-Millán. See Statement of Uncontested Facts No. 48. On March 11, 2006, Rodríguez-Millán was issued another written warning for violating the no show/no call rule to excuse himself from work. See Statement of Uncontested Facts No. 49.

El Conquistador made numerous efforts to contact Rodríguez-Millán in an attempt to retain him as an employee. On March 27, 2006, Olga Martínez, Associate Human Resources Director at El Conquistador, sent Rodríguez-Millán a letter as he had not shown up to work and requesting him to contact Human Resources within three (3) days of the receipt of the letter. See Statement of Uncontested Facts No. 50. Subsequently, on July 17, 2006, Julio Gómez, Human Resources coordinator, sent Rodríguez-Millán a letter stating that it was important for him to report to the Human Resources Office within three working days from the receipt of said letter. See Statement of Uncontested Facts No. 51. Again, on August 10, 2006, Olga Martínez,

Associate Human Resources Director at El Conquistador, sent Rodríguez-Millán a letter as he had not shown up to work as of July 29, 2006, and requesting him to contact Human Resources within three (3) days of the receipt of the letter. See Statement of Uncontested Facts No. 52. Rodríguez-Millán was terminated from employment on September 2, 2006. See Statement of Uncontested Facts No. 53.

It is important to state that during the taking of his deposition, Rodríguez-Millán alleged that he did not show up to work because he was waiting for his supervisor to call him. However, interestingly enough, Rodríguez-Millán also stated during the taking of his deposition that his supervisor had contacted him to inform him that he would be transferred to a food and beverage outlet in the pool area, position which Rodríguez-Millán informed his supervisor he could not take because he had another job during the day. See Statement of Uncontested Facts No. 57. One must inevitably conclude that Rodríguez-Millán did not report to work because he had an employment position elsewhere and opted for abandoning his employment at El Conquistador.

In conclusion, the Plaintiffs do not have any evidence to establish the necessary causal connection between their complaints about the allegedly illegal deductions and their employment terminations. The Plaintiffs were terminated for good cause under the parameters established by Law 80, and the Defendant has more than enough proof as to its asserted legitimate reasons for Plaintiffs Canales', Cachola's, Rodríguez-López' and Rodríguez-Millan's employment terminations.

# V. CONCLUSION AND PRAYER

Ultimately, the evidence presented with the instant Motion for Summary Judgment shows that Plaintiffs' claims rest entirely upon conclusory, unsupported, and self-serving allegations and there is a complete absence of a genuine issue of material fact requiring a trial. There is no dispute as to the material facts of this case, and the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. While looking at the underlying facts and all inferences in a light most favorable to the nonmoving party, it is clear that the Defendant has offered concrete evidence from which a reasonable juror could return a verdict in their favor.

First of all, the record firmly established that the amounts typified by the Plaintiffs as tips are nothing more than service charges, and that the allegedly illegal twenty five percent (25%) service charge deductions were legal according to the FLSA and its regulations. Secondly, as discussed thoroughly above, the Plaintiffs have no evidence to establish that Plaintiffs Canales, Cachola, Rodríguez-López and Rodríguez-Millán were terminated without just cause by the Defendant for having complained about the allegedly illegal deductions. On the contrary, the evidence at hand establishes that the Plaintiffs were terminated from employment for more than just cause, pursuant to the reasonable conduct rules and regulations implemented by El Conquistador and in accordance with Law 80. They were terminated in response to their willful violations to the house rules consisting of performance below standards; failure to follow proper procedures; absenteeism; violation to the no show/no call rule; job abandonment; alteration of records; and similar violations, all legitimate, non-discriminatory and non-retaliatory reasons.

**WHEREFORE,** EL Conquistador moves the Court to dismiss Plaintiffs' suit pursuant to Federal Rule of Civil Procedure 56, inasmuch as there is no genuine issue as to any material fact and summary judgment should be entered on its behalf as a matter of law. In addition, El Conquistador respectfully requests to be awarded costs, attorneys'' fees, and any other relief that it deems just and proper. Moreover, since the causes of action filed by the Plaintiffs are frivolous and merit less, El Conquistador requests the imposition of economic sanctions under Federal Rule 11 of Civil Procedure.

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: George E. Green, Esq. and Joanna Bocanegra, Esq.

s/ EDWIN J. SEDA-FERNÁNDEZ
USDC-PR NO. 205212
Attorney for the Defendant
**ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel.: (787) 756-9000
Fax: (787) 756-9010
seda@amgprlaw.com

s/ PATRICIA LIMERES-VARGAS
USDC-PR NO. 221610
Attorney for the Defendant
**ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel.: (787) 756-9000
Fax: (787) 756-9010
plimeres@amgprlaw.com